ANDREW ZAKUTANSKY, PLAINTIFF, v. CITY OF BAYONNE, KIWANIS CLUB OF BAYONNE AND ST. ANDREW'S ROMAN CATHOLIC CHURCH OF BAYONNE, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided October 27, 1967.

*Mr. Emanuel Greenberg* for plaintiff.

*Mr. James P. Dugan* for defendant City of Bayonne.

*Mr. T. James Tumulty* for defendant St. Andrew's Roman Catholic Church of Bayonne.

PINDAR, J. S. C. ■ The complaint herein is in the nature of a declaratory judgment action specifically involving two municipal permits granted by City of Bayonne (city) to Kiwanis Club of Bayonne (club), and St. Andrew's Roman Catholic Church of Bayonne (church) named as defendants. The club was not served with process, excluding it as a party. Furthermore, it is initially stated that since both events were held prior to the filing of this suit, considera-

tion of them becomes moot. This is not disputed and will be accepted by this court. Notwithstanding, counsel for the city urges that the present litigation presents for determination the question of the city's authority to grant similar permits in the future. Counsel was granted leave to file a supplementary supporting affidavit to the above effect.

However, the Court does not agree with plaintiff that the permits now at issue are *similar* to those contained in the original complaint.

The two original permits which formed the basis of this motion were issued pursuant to a city council resolution passed on February 17, 1967. The permit to Club allowed a circus; the permit to Church allowed a drum and bugle competition. Both events were to take place in Veteran's Park Stadium. The permits now under consideration as stated in the supplemental affidavit all relate to *athletic* events to be held in Veteran's Park Stadium. Thus the Court does not decide the question whether the statutes at issue authorize a municipality to grant permits for events other than those athletic in nature.

The matter is now before the court on counter-motions for summary judgment.

Plaintiff contends that the city acts *ultra vires* in permitting these uses. He further contends to support his conclusion that *R. S.* 40:61–5, and "incidentally" *R. S.* 40:61–4, are both violated. Whether the city is or is not acting *ultra vires* is a question of statutory construction. The case is therefore properly one for summary judgment.

Although the courts will generally view the evidence in a light most favorable to the party against whom a judgment is sought, they will not perform useless exercises. Where there are no inferences to be drawn from the evidence in favor of either party, the rule has no application. The court therefore treats the evidence the same for all parties in this case of cross-motions where the facts are not disputed.

Our courts are not free, however, to disregard one rule of statutory construction dictated by our Constitution, *i. e.,* that powers granted by the Legislature to municipali-

ties are to be liberally construed in their favor. Not only the powers expressly granted, but powers implied from, incidental or essential to the expressed powers, are to be both supplied and liberally construed in the municipality's favor. *N. J. Const.* 1947, *Art.* IV, § VII, *par.* 11.

Implementing this policy, *N. J. S. A.* 40:24–4 unequivocally states that all sections of *Title* 40, "Municipalities and Counties," appearing within the confines of *Subtitle* 3 (wherein the instant statutes appear) are to be construed by the courts "most favorably to municipalities." This New Jersey policy is unique in the 50 states and determines this court's approach in construing the instant statutes which are set out below:

"The body in control of any playground or place of public resort and recreation of any municipality, in order to provide funds for improving, maintaining and policing thereof, may hold outdoor exhibitions, concerts, games and contests therein, and charge and collect reasonable admission fees for entrance thereto, while in use for any such purpose. No such playground or place of resort and recreation shall be so used on more than two days, nor more than eight hours in all, in any one week, and no admission fee shall be charged or collected from children under twelve years of age." *N. J. S. A.* 40:61–4.

"The body or authority having control of any public park, playground or other public place or property in any municipality may permit the same or part thereof to be used for athletic purposes or as playgrounds by the pupils of public schools of the municipality and the public generally, subject to such reasonable regulations as may be prescribed by the body or authority having control thereof.

The board of education of the school district coextensive with the municipality may charge and collect a reasonable admission fee from each person entering such park, playground or place of public resort and recreation, or part thereof, for the purpose of witnessing any athletic contest or game wherein the pupils of the public schools may be contestants or participants, but only where the admission fees so charged and collected are used in furtherance and maintenance of athletics and athletic purposes in the public schools of the municipality, and have first been approved by the authority having control of such park, playground and place of public resort and recreation, or part thereof, used for athletic purposes.

No such park, playground or place or part thereof shall be so used for any athletic game or contest for which an admission fee is to be charged on more than two days, nor more than eight hours in all, in any one week.

This section shall not apply to any county park situated in any municipality." *N. J. S. A.* 40:61–5.

While it is clear that our courts can supply, in the sense of articulate, powers incidental or essential to expressly granted powers, it is equally clear that they cannot legislate. Therefore, where it is apparent that the Legislature did not intend a particular statute to have a particular effect, the courts will not violate their trust. It is for these reasons that plaintiff's contention that *R. S.* 40:61–4 applies in the instant case must be rejected. Because the city is not "holding" any of the specified events, *R. S.* 40:61–4 is inapplicable. The word "hold" as used by the Legislature connotes sponsorship, but there is no statement in the pleadings or affidavits that the city is sponsoring any of the events of which the plaintiff complains. Certainly, if the Legislature intended the word "hold" to include the concept of permission, it would have repeated the word "hold" in *R. S.* 40:61–5. It did not; rather, it specifically used the word "permit." It is unlikely the two words were used to convey the same meaning.

On the other hand, *R. S.* 40:61–5 indicates the creation of additional powers in the municipality. This section speaks in terms of the body or authority in control of parks having the power to permit the *public generally* to use public places for athletic purposes or for playgrounds, subject to regulations regarding such use as might reasonably be imposed by such body or authority. The second paragraph creates a power in the board of education to charge an admission fee to all athletic events in which public school students participate, provided, first, that the board obtain prior approval from the proper authority, and second, if approval is granted the board applies the proceeds for athletic purposes. Plaintiff contends that this second paragraph is the exclusive manner by which an admission charge could be levied. The court disagrees. If the governing body can allow the *public generally* the use of public places, it can also permit various private groups which con-

stitute the *public generally* to charge reasonable admission fees. There is no doubt, too, that the governing body could prohibit a private organization from charging an admission fee since the governing body is given the power to impose reasonable regulations. The statute was not enacted in a vacuum. Surely the Legislature is aware of the practice of allowing private groups to use public places, as well as the fact that these private groups have been allowed to charge admission fees. *Strock v. City of East Orange,* 80 *N. J. L.* 619 (*Sup. Ct.* 1910), affirmed 82 *N. J. L.* 543 (*E. & A.* 1911). See also *Strock v. City of East Orange,* 77 *N. J. L.* 382 (*Sup. Ct.* 1909).

The *Strock* cases involved interpretations of statutes different from those now being considered. But a glance at *R. S.* 40:184–3 and 7 leaves no doubt that a board of playground commissioners may permit private organizations to use park facilities and charge admission fees for entrance to their events. If the city had a board of playground commissioners (we are informed by counsel it does not have such a body,) *R. S.* 40:184–3 and 7 would be dispositive of this motion. But the city's failure to have such a board is not fatal. It is unlikely that the Legislature would have intended a board of playground commissioners appointed by the city council to have greater powers in control of the playgrounds than the municipality responsible for the commissioners' appointment. By fair implication, the power to permit private organizations to charge admission fees should be supplied to *R. S.* 40:61–5. This interpretation is reinforced by the third paragraph of *R. S.* 40:61–5, quoted *supra,* wherein it is assumed that admission fees will be charged, and therefore a limitation is imposed presumably to remove constitutional objections like those put forth in the *Strock* cases, *supra.*

Finally, the court finds no merit in plaintiff's contention that the power to charge admission is the power to exclude the general public, and hence the park's purpose is subverted. Of course, those who do not wish to pay or who are unable to pay the admission will be excluded from

witnessing various events. But having granted the power to charge an admission, the Legislature probably concluded that the good in this provision outweighed the bad. Further, the Legislature, as stated earlier, did give the power to the municipality to impose reasonable regulations on the use of the parks. This includes the power to prohibit or otherwise regulate admission charges. The wisdom of this legislative policy is not for the court to pass upon. Obviously, if the power is abused the courts will provide a remedy. But such is not the present case.

For the foregoing reasons, summary judgment is denied plaintiff and granted to the city.